IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

RICHARD THORNE,

           Plaintiff,

    v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.

Civil No. 6:12-cv-00338-PK

OPINION AND ORDER

    ALAN STUART GRAF
    316 Second Rd.
    Summertown, TN  38483

        Attorney for Plaintiff

    S. AMANDA MARSHALL
    United States Attorney
    ADRIAN L. BROWN
    Assistant United States Attorney
    1000 SW Third, Suite 600
    Portland, OR  97204

    DAVID MORADO
    Regional Chief Counsel, Region X, Seattle
    SCOTT T. MORRIS
    Special Assistant United States Attorney
    Social Security Administration
    Office of the General Counsel
    1301 Young Street, Suite A702
    Dallas, TX  75202

        Attorneys for Defendant

1 - OPINION AND ORDER -

PAPAK, Magistrate Judge.

Plaintiff Richard Thorne challenges the Commissioner's decision denying his application for disability insurance benefits ("DIB") under Title II and supplemental security income ("SSI") under Title XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 404-34, 1381-83f.  This court has jurisdiction under 42 U.S.C. § 405(g).  Both parties have consented to proceed before a Magistrate Judge in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c).  For the reasons set forth below, the Commissioner's decision is AFFIRMED and this case is DISMISSED.

## BACKGROUND

On May 19, 2010, plaintiff protectively filed applications for a period of disability, disability insurance benefits, and SSI disability benefits.  Tr. 13, 145-51.  Plaintiff claimed he became disabled as of March 25, 2010, due to "arthritis in broken [right] hand" and "mental."  Tr. 145, 152, 178.

Born on December 18, 1957, plaintiff was 52 years old on the alleged onset date of disability, and 53 years old on the date of the ALJ's decision.  Tr. 20, 174.  Plaintiff had a "limited" education, as he dropped out of high school in the eleventh grade. Tr. 20, 38-39.  Plaintiff worked for over 30 years as a heavy equipment operator.  Tr. 20, 33.

On May 26, 2010, plaintiff's application for SSI was denied on the basis that plaintiff had resources in excess of the

statutory limit.   Tr. 97-102.   Plaintiff's application for disability insurance benefits was denied initially on July 14, 2010, and on reconsideration on November 4, 2010. Tr. 111-14. On November 29, 2010, Plaintiff requested a hearing before an ALJ. Tr. 115-17.   Plaintiff also filed a second application for SSI. Tr. 157-62.

On March 8, 2011, Administrative Law Judge ("ALJ") Rudolph Murgo conducted a hearing.   Tr. 32-78.   Plaintiff appeared at the hearing, with counsel, and testified.   Tr. 32-57.   Clinical Psychologist Margaret Moore, Ph.D., and vocational expert Jeffrey Tittlefitz also testified.

On April 26, 2011, the ALJ issued a decision finding plaintiff not disabled. Tr. 10-24. On May 11, 2011, plaintiff requested review of the ALJ's decision. Tr. 7-9. On December 21, 2011, the Appeals Council declined to review the ALJ's decision. Tr. 1-6.   On February 24, 2012, plaintiff filed this action to obtain review of the Commissioner's final administrative decision. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); 20 C.F.R. §§ 404.981, 416.1481, 422.210.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219,

1222 (9th Cir. 2009).   "Substantial evidence means more than a
mere scintilla but less than a preponderance; it is such relevant
evidence as a reasonable mind might accept as adequate to support
a conclusion."  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir.
2009) (citation omitted).   The court must weigh all of the
evidence, whether it supports or detracts from the Commissioner's
decision.  *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).
If evidence supports more than one rational interpretation, the
court upholds the Commissioner's decision.  *Tommasetti v. Astrue*,
533 F.3d 1035, 1038 (9th Cir. 2008).   A reviewing court, however,
"cannot affirm the decision of an agency on a ground that the
agency did not invoke in making its decision,"  *Stout v. Comm'r
Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (citation
omitted).   "Finally, the court will not reverse an ALJ's decision
for harmless error, which exists when it is clear from the record
that the ALJ's error was inconsequential to the ultimate
nondisability determination."   *Tommasetti*, 533 F.3d at 1038
(citation omitted).

## DISCUSSION

### I.   The ALJ's Findings

The ALJ applied the five-step, sequential evaluation for
determining whether plaintiff was disabled.  Tr. 14-15.  *See* 20
C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  As an initial matter,

the ALJ found plaintiff remained insured under Title II of the Act throughout the relevant period.  Tr. 15, Finding 1.  The parties do not dispute this finding.

At step one, the ALJ found plaintiff had not engaged in substantial gainful activity since his alleged onset date of March 25, 2010.  Tr. 15, Finding 2.  At step two, the ALJ found plaintiff had the following, medically-severe impairments: depression and alcohol abuse.  Tr. 15, Finding 3.  At step three, the ALJ found plaintiff's impairments did not meet or equal the requirements of a listed impairment.  Tr. 16-17, Finding 4.  The parties do not dispute the ALJ's findings in steps one through three.

Before proceeding to step four, the ALJ assessed plaintiff with the following residual functional capacity ("RFC"):

> [T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations:  he can perform tasks that do not involve any contact with the public, and only occasional co-worker contact.

Tr. 17, Finding 5.  The ALJ considered plaintiff's subjective complaints of pain and other symptoms, but found them to be less than fully credible.  Tr. 17-19, Finding 5.  Plaintiff disputes the ALJ's assessment of his credibility, as well as the ALJ's assessment of his RFC in terms of the evaluation of his alcohol abuse and the weight he accorded the various medical opinions of record.

5 - OPINION AND ORDER -

At step four, the ALJ concluded plaintiff could perform his past relevant work as a heavy equipment operator. Tr. 19, Finding 6. As such, the ALJ found plaintiff not disabled at any time between March 25, 2010, his alleged onset date, and April 26, 2011, the date of the ALJ's decision. Tr. 20, Finding 7. Plaintiff does not specifically dispute this finding, but disputes the ALJ's credibility and RFC findings, as mentioned above.

## II.   Plaintiff's Allegations of Error

Plaintiff alleges the ALJ erred by: 1) evaluating plaintiff's impairments in contravention of 20 C.F.R. §§ 414.1535, 416.935; 2) failing to give legally sufficient reasons for the weight afforded the medical opinions; and 3) failing to offer any reasoning for finding plaintiff not fully credible. Plaintiff further argues the ALJ's decision should be remanded for payment of benefits.

### A.   Evaluation of Plaintiff's Impairments

Plaintiff asserts the ALJ failed to follow the mandates of 20 C.F.R. §§ 404.1535, 416.935 in evaluating the impact of alcohol use on plaintiff's impairments and rejecting the opinion of the examining psychologist Leslie Hughey, Ph.D.[1] Plaintiff argues the

---

[1] Plaintiff also appears to assert the ALJ did not articulate a sufficient reason for affording Dr. Hughey's opinion "less weight," a separate issue addressed below.

ALJ erred because he failed to perform a two-step drug and alcohol analysis ("DAA").

Plaintiff seems to misunderstand the critical point that the DAA is only performed if the ALJ first finds that the claimant has a disability.    20 C.F.R. §§ 404.1535, 416.935(a).    The Ninth Circuit made clear that "an ALJ should not proceed with the analysis under § 404.1535 or § 416.935 if he has not yet found the claimant to be disabled under the five-step inquiry." *Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001).    "[A]n ALJ must first conduct the five-step inquiry without separating out the impact of [substance abuse].    If the ALJ finds that the claimant is not disabled under the five-step inquiry, then the claimant is not entitled to benefits and there is no need to proceed with the [DAA] analysis." *Id.*

Here the ALJ conducted the initial five-step inquiry without factoring out the impact of plaintiff's alcohol use.    The ALJ concluded that plaintiff was not disabled and was able to work, even with the limitations attributable to his alcohol abuse. Plaintiff himself testified he sees no connection between his alcohol abuse and his problems.    Tr. 56-57.    Also, the ALJ noted that in lay witness evidence submitted by plaintiff's friend she asserted that plaintiff's "alcohol abuse is no longer there."    Tr. 19 (quoting Tr. 233).    Finally, the ALJ gave great weight to psychologist Douglas Smyth, Ph.D.'s findings and assessment, "as

it suggests that even with ongoing alcohol abuse, the claimant remains capable of understanding, remembering, and carrying out both simple and complex instructions, with certain social limitations." Tr. 19.  These findings led the ALJ to conclude that plaintiff was able to work and, having made such a finding, the ALJ was not required to conduct an additional five-step inquiry to determine the effect of Thorn's drug use on his disability.

### B.  Medical Evidence

Plaintiff argues the ALJ failed to give legally sufficient reasons for the weight given to medical opinions.  He contends the ALJ did not give "specific and legitimate" reasons for rejecting Dr. Brennan's opinion and did not address Dr. Hein's opinion. Plaintiff further argues the ALJ inappropriately based the weight given to Dr. Hughey's, Dr. Moore's, and Dr. Smyth's opinions on their consistency with the RFC assessment.

The ALJ is responsible for resolving conflicts and ambiguities in medical evidence.  *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (citation omitted).  In weighing a claimant's medical evidence, the ALJ generally affords enhanced weight to the opinion of the claimant's treating physicians if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent" with other substantial evidence in the record.

20 C.F.R. § 416.927(c)(2). "Those physicians with the most significant clinical relationship with the claimant are generally entitled to more weight than those physicians with lesser relationships." *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008) (citation omitted).

In consequence, an uncontradicted treating physician's opinion may only be rejected for "clear and convincing" reasons supported by evidence in the record, and a contradicted treating physician's opinion may only be rejected for "specific and legitimate" reasons supported by evidence in the record. *See Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)). Moreover, several factors determine the weight the ALJ should give to a physician's opinion, including the length of the treatment relationship and frequency of examination, the amount of evidence that supports the opinion, the consistency of the medical opinion with the record as a whole and the physician's specialty and understanding of the disability program. *Orn v. Astrue*, 495 F.3d 625, 631-632 (9th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(2)).

Similarly, the ALJ is "not bound by the uncontroverted opinions of the claimant's physicians on the ultimate issue of disability" if he gives clear and convincing reasons for rejecting those opinions. *Reddick*, 157 F.3d at 725 (quoting *Montijo v.*

*Sec'y of Health & Human Servs.*, 729 F.2d 599, 601 (9th Cir. 1984)). Moreover, "[a] treating physician's opinion on disability, even if controverted, can be rejected only with specific and legitimate reasons supported by substantial evidence in the record. In sum, reasons for rejecting a treating doctor's credible opinion on disability are comparable to those required for rejecting a treating doctor's medical opinion." *Id.* (citation omitted). When "the Commissioner fails to provide adequate reasons for rejecting the opinion of a treating or examining physician, we credit that opinion 'as a matter of law.'" *Lester*, 81 F.3d at 834 (quoting *Hammock v. Bowen*, 879 F.2d 498, 502 (9th Cir. 1989)).

### 1. Dr. Hughey

Plaintiff reported to consultative psychologist Leia Hughey, Ph.D., that he essentially just grew tired of working and quit. Tr. 299. Plaintiff also reported that he was never late to work and never missed days until he abruptly quit working on March 25, 2010. Tr. 299-300. Plaintiff also told Dr. Hughey he had not been drinking alcohol recently, but that the reason was that he lacked funds to buy alcohol. Tr. 299.

Dr. Hughey diagnosed plaintiff as suffering from Alcohol Abuse and Major Depressive Disorder. Tr. 303. Dr. Hughey found plaintiff had marked limitations in several respects which are not

accounted for in the ALJ's ultimate RFC determination.  In her "Mental Residual Function Capacity Report," Dr. Hughey found marked limitations in plaintiff's ability to "perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances," and "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods," and "ability to sustain an ordinary routine without special supervision."  Tr. 305.  According to the instruction section of the Mental Residual Function Capacity Report, these were _not_ limitations Dr. Hughey believed plaintiff had as a result of his alcoholism.  Tr. 304.

Upon careful review of Dr. Hughey's report, however, several of her "marked limitations" findings appear unsupported or even contradicted by information contained in her narrative.  Moreover, despite the qualifying language at the beginning of Dr. Hughey's Mental Residual Function Report that limitations resulting from alcohol are not included, the limitations she did find present are consistent with the effects of alcoholism as described in the narrative.  Finally, Dr. Hughey's opinions as to plaintiff's limitations are contradicted by other evidence in the record, including opinions from other physicians.

The ALJ did not articulate any of these specific reasons for giving Dr. Hughey's opinion less weight.  Instead, the ALJ gave

"less weight" to Dr. Hughey's functional assessment because her report "does not specify . . . the role alcohol abuse plays in [plaintiff's] mental limitations." Tr. 18.  Taken on its face, the ALJ's reason for discounting Dr. Hughey's opinion was not valid.  If the ALJ believed alcohol use was contributory to the limitations assessed by Dr. Hughey, then the ALJ was first required to consider the plaintiff's limitations without considering the effect of substance abuse.  *See* 20 C.F.R. §§ 404.1535, 416.935; *Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001).

This court cannot assign weight to Dr. Hughey's opinion or affirm the ALJ's decision on a ground upon which the ALJ did not rely.  *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).  As such, notwithstanding the existence of evidence in the record which would support a decision to give Dr. Hughey's opinion less weight, the fact that the ALJ limited his reason to the report's failure to specify the role alcohol abuse plays in plaintiff's mental limitations was error.

Because the ALJ erred in failing to articulate a legally sufficient reason for giving Dr. Hughey's opinion less weight, the court must evaluate whether the error was harmless, or whether there was prejudice.  *Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012) (citing *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009)).  "Determination of prejudice requires 'case-specific application of

judgment, based upon examination of the record,' not 'mandatory presumptions and rigid rules.'" *Id.* (citing *Sanders*, 556 U.S. at 407). "Among the case-specific factors [the court] must consider are 'an estimation of the likelihood that the result would have been different. . . .'" *Id.* (citing *Sanders*, 556 U.S. at 411).

The burden in harmless error analysis is "on the party claiming error to demonstrate not only the error, but also that it affected his 'substantial rights,' which is to say, not merely his procedural rights." *Id.* (citing *Sanders*, 556 U.S. at 407-409) (footnote omitted). Mere probability of prejudice is not enough, the party claiming error must show "a substantial likelihood of prejudice." *McLeod v. Astrue*, 1640 F.3d 881, 888 (9th Cir. 2011). "Where harmlessness is clear and not a 'borderline question,' remand for reconsideration is not appropriate." *Id.* (citing *Sanders*, 556 U.S. at 413).

Here, any error the ALJ made in failing to articulate a sufficient legal reason to afford Dr. Hughey's opinion on plaintiff's limitations was harmless. *See Curry v. Sullivan*, 925 F.2d 1127, 1129 (9th Cir. 1991) (failure by ALJ to articulate or explain weight given reports of consultative physician can be harmless error). In light of the evidence in the record, plaintiff has not demonstrated the outcome would have differed.

### 2.    Dr. Moore and Dr. Smyth

Plaintiff alleges the ALJ inappropriately based the weight given the opinions of Margaret Moore, Ph.D. and Douglas Smyth, Ph.D. on their consistency with the residual functional capacity assessment. Plaintiff argues the ALJ improperly formulated the RFC first, then gave weight to their opinions only to the extent they were consistent with his pre-determined RFC assessment.

Clinical psychologist Margaret Moore, Ph.D., testified at the hearing that "alcohol makes depression worse, and that the record suggests that the [plaintiff] has a significant history of alcohol consumption." Tr. 19. She also stated, however, that she "would expect improvement in [plaintiff's] focus, attention, and ability to perform complicated tasks with alcohol cessation," and she acknowledged that "she could only speculate as to whether the claimant's alcohol abuse was merely a response to undertreated depression." Tr. 19.

Douglas Smyth, Ph.D., who examined plaintiff after the hearing, confirmed the documentary evidence supporting plaintiff's alcohol abuse. Tr. 312-13. Dr. Smyth found plaintiff's self-report minimizing his alcohol consumption to be "misleading" and "not credible." Tr. 19, 312. In addition, Dr. Smyth reported plaintiff showed "marginal effort" and was "marginally to poorly cooperative throughout the session," which influenced the results of testing he performed. Tr. 311. The marginal cooperation, combined with the accompanying documentation, plaintiff's refusal

to articulate the specifics of quitting his long-term job, lack of clarity and possible bias regarding third party evidence of plaintiff's functions, and the misleading self-reporting on alcohol use, led Dr. Smyth to conclude that secondary gain in plaintiff's symptom presentation could not be ruled out. Tr. 312.

Dr. Smyth also reported that plaintiff "presented with mixed social functioning," but noted the "historic establishment of long-term relationships, as well as a history of long-term, stable employment," and that the reported "current social isolation and voluntary unemployment" was "suggestive of current interpersonal dysfunction." Tr. 313. Finally, Dr. Smyth concluded there was "insufficient evident of any cognitive or intellectual impairment in the present evaluation." Tr. 312.

The ALJ gave lesser weight to Dr. Hughey's and Dr. Moore's opinions because they did not specify the role alcohol abuse plays in plaintiff's mental limitations and could only speculate whether his alcohol abuse was merely a response to undertreated depression. Tr. 18-19. In contrast, he gave great weight to Dr. Smyth's findings and assessment, "as it suggests that even with ongoing alcohol abuse, the claimant remains capable of understanding, remembering, and carrying out both simple and complex instructions, with certain social limitations." Tr. 19. The ALJ properly weighed these assessments and the resulting

limitations they imposed on plaintiff's work-related abilities and formulated his RFC assessment thereon.

### 3.  Dr. Brennan

Plaintiff began seeing Stephen Brennan Psy.D., after he filed his disability claim.   Plaintiff reported being depressed and angry.   Tr.  249.     He  also  reported  poor  concentration, forgetfulness, and hearing voices.   Tr. 249.   Plaintiff also reported  to  Dr.  Brennan  that  working  was  the  cause  of  his depression and that he wished to pursue retirement. Tr. 251. Dr. Brennan  diagnosed  plaintiff  with  Major  Depressive  Disorder recurrent,  severe  with  psychotic  features,  and  possible  alcohol abuse.

At  their  next  session,  Dr.  Brennan  noted  that  plaintiff appeared  to  be  doing  much  better  in  the  last  week.    Tr.  248. Plaintiff reported, however, that he was not.  Tr. 248.  Plaintiff also reported that his depression had gotten much worse over the previous two years.  Tr. 248.  Dr. Brennan recommended contacting plaintiff's  primary  care  physician  to  increase  plaintiff's medication dosage.  Tr. 248.

One week later, Dr. Brennan noted that "[e]ssentially things remained unchanged." Tr. 247.  Dr. Brennan assessed plaintiff as remaining "seriously depressed."   Tr. 247.   Plaintiff was to return in three weeks, or sooner if he felt unsafe because of suicidal thoughts.

16 – OPINION AND ORDER –

Plaintiff returned to see Dr. Brennan three weeks later. Tr. 246. Dr. Brennan again noted that plaintiff appeared to be doing better, but that plaintiff reported his symptoms as remaining the same or even worse. Tr. 246.

The last report from Dr. Brennan in the record is from plaintiff's visit five weeks later. Tr. 274. Dr. Brennan assessed plaintiff as continuing with very serious depression. Tr. 274. Dr. Brennan noted, however, that plaintiff "may have an ulterior motive for presenting poorly because he wants worker's compensation and Social Security Disability." Tr. 274.

The ALJ adopted Dr. Brennan's opinion as to plaintiff's diagnosis of depression as a severe impairment, but gave only "partial weight to Dr. Brennan's treatment notes, to the extent that the claimant has certain limitations in social functioning attributable to depression." Tr. 18. The ALJ noted Dr. Brennan described plaintiff's subjective complaints as genuine and not significantly exaggerated. Tr. 18. He also noted, however, Dr. Brennan's concern about plaintiff's possible ulterior motive and "that [Dr. Brennan's] diagnosis of 'very serious depression' is based heavily on the claimant's subjective complaints and is not entirely consistent with the claimant's apparent improvement during their counseling sessions." Tr. 18.

One of the factors an ALJ must consider in assessing weight to a medical source opinion is its supportability by objective

evidence, as opposed to merely relying on a claimant's subjective statements. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *see also* 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3). In giving only partial weight to Dr. Brennan's opinions, the ALJ concluded that his findings were inconsistent with the objective medical record and plaintiff's reported activities. Moreover, the court finds at no place in the record did Dr. Brennan specifically opine that plaintiff was unable to work at all. Accordingly, the ALJ did not improperly weigh Dr. Brennan's opinion.

### 4. Dr. Hein

Plaintiff also argues the ALJ erred in overlooking Dr. Hein's opinion altogether. Plaintiff first saw John Hein, M.D. on March 25, 2010. Tr. 238. His chief complaint was depression. *Id.* Plaintiff reported suffering depression for several years, and related "all of his problems to stress on the job." *Id.* Dr. Hein diagnosed plaintiff as suffering from Depression, Major, Recurrent, and prescribed medication. Tr. 240.

Plaintiff saw Dr. Hein again in May 14, 2010, for a "follow-up visit for his workers comp claim." Tr. 236. Plaintiff complained of "worsening symptoms of depression, anxiety and suicidality while on the job doing road construction over last 20 years or so." *Id.* He reported he could "not take it anymore and walked off the job." *Id.* Dr. Hein noted plaintiff was currently

seeing the psychologist, Dr. Brennan, and that his medication had been recently increased. *Id.* Dr. Hein also stated plaintiff "reports subjectively that [his depression] is unchanged, however my assessment is that he seems somewhat improved." Tr. 237. Nonetheless, Dr. Hein concluded "I would agree that he remains unable to work." *Id.*

The ALJ's failure to explicitly reject Dr. Hein's opinion that plaintiff could not return to work, if error, was harmless. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("[a] decision of the ALJ will not be reversed for errors that are harmless"). The ALJ nowhere explicitly recited that he was rejecting Dr. Hein's conclusion, but his findings contain numerous specific and legitimate reasons for rejecting a conclusion that plaintiff was disabled and could not work.

C.   **Plaintiff's Credibility**

Plaintiff argues the ALJ did not provide clear and convincing reasons supported by substantial evidence for not finding him credible. Thus, he contends, the ALJ improperly discounted his subjective symptom testimony.

The Ninth Circuit has developed a two-step process for evaluating the credibility of a claimant's own testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez*, 572 F.3d at 591. First, the ALJ "must determine whether the

claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). When doing so, the claimant "need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

Second, "if the claimant meets the first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc)).

The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at 1284. The Commissioner recommends assessing the claimant's daily activities; the location, duration, frequency, and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; and any measures other than treatment the individual uses or has used to relieve pain or other symptoms. *See* SSR 96-7p, available at 1996 WL 374186.

Further, the Ninth Circuit has said that an ALJ also "may consider . . . ordinary techniques of credibility evaluation, such as the reputation for lying, prior inconsistent statements concerning the symptoms, . . . other testimony by the claimant that appears less than candid [and] unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Smolen*, 80 F.3d at 1284. The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively

by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir.2006). If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 949 (9th Cir. 2002).

Here, the ALJ determined that plaintiff's medically determinable impairment could reasonably be expected to produce some degree of symptoms, but that his statements concerning the intensity, persistence and limiting effects of these symptoms are not fully credible. Tr. 18. With respect to his physical limitations, the ALJ noted that "in activities of daily living, the claimant has no restriction." Tr. 16. Plaintiff "reported he can independently manage activities of personal care, including grooming and hygiene." *Id.* He also reported he "does not prepare his own meals, but that he know how to do so" and also "knows how to clean up after meals, wash dishes, sweep, mop, vacuum, and wash laundry" and "can mow the lawn." *Id.*

The ALJ considered plaintiff's mental limitations, noting plaintiff's testimony "that his mental impairment manifested as impatience with co-workers, hostility, and losing his temper." Tr. 18. The ALJ recognized plaintiff's suicidal ideation in the past, but noted plaintiff reported improvement and that he had not thought about it lately. *Id.* Plaintiff reported difficulties socializing and that he does not feel comfortable with others.

22 - OPINION AND ORDER -

Tr. 16.   The ALJ found lay witness evidence from plaintiff's friend about her extensive relationship with him, however, to be "apparently inconsistent with [his] subjective reports of social isolation." Tr. 19.

The ALJ also considered evidence from the medical record when he evaluated plaintiff's credibility.  As discussed above, the ALJ credited Dr. Smyth's determination that plaintiff had "'moderate' limitations in his ability to interact appropriately with co-workers, supervisors, or the public." Tr. 19 (citation to record omitted).

The medical evidence considered by the ALJ also included evidence about plaintiff's alcohol abuse and its effect on plaintiff's depression.  Plaintiff's friend submitted lay evidence that plaintiff's "alcohol abuse is no longer there."  Tr. 19 (citation to record omitted).  Clinical psychologist Dr. Moore testified at the hearing that alcohol makes depression worse, and that "she would expect improvement in [plaintiff's] focus, attention, and ability to perform complicated tasks with alcohol cessation." Tr. 19.  In his post-hearing examination, Dr. Smyth ultimately confirmed that assessment, finding no evidence of cognitive or intellectual impairment during the evaluation.  *Id.*

On this record, the Court concludes the ALJ provided clear and convincing reasons supported by substantial evidence in the record for finding plaintiff's testimony not entirely credible as

23 - OPINION AND ORDER -

to the intensity, persistence, and limiting effects of his condition. Thus, the ALJ properly rejected plaintiff's testimony.

## CONCLUSION

For the reasons stated above, the Commissioner's final decision that plaintiff is not disabled is based on proper legal standards and is supported by substantial evidence; it is therefore AFFIRMED.

DATED this 20th day of June, 2013.

_____
Honorable Paul Papak
United States Magistrate Judge

24 - OPINION AND ORDER -